UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUANE N.,[1]    *Plaintiff*, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY,    *Defendant*. | )   3:22-CV-65 (SVN) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   March 6, 2023 <br> ) |

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM

Sarala V. Nagala, United States District Judge.

Plaintiff Duane N. brought this suit pursuant to 42 U.S.C. § 405(g), to appeal the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying his claim for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act. Plaintiff filed a motion for an order reversing the decision of the Commissioner or, in the alternative, an order remanding for another hearing. ECF No. 21. Defendant cross-moved for an order affirming the Commissioner's decision. ECF No. 24. For the reasons outlined below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion to reverse, and the Court DENIES Defendant's motion to affirm.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

The parties have agreed to certain facts, set forth by Plaintiff at ECF No. 22 and adopted in part by Defendant at ECF No. 24-2. Plaintiff was born in 1975, and he claimed an effective onset date of his various disabilities of September 4, 2019, the date he filed his application for SSI.

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

ECF No. 24-2 ¶¶ 1, 3.  Plaintiff's alleged disabilities stem from post-traumatic stress disorder ("PTSD"), anxiety, left-side abdominal pain, lack of feeling on the bottom of the bilateral feet, and diabetes.  *Id.* ¶ 4; *see also* Tr. at 279.  He generally alleged that his physical impairments prevented him from standing, walking, lifting, squatting, bending, reaching, kneeling, and talking.  ECF No. 24-2 ¶ 4; *see also* Tr. at 301.  On September 4, 2019, the amended onset date, Plaintiff presented to Providence Community Health Center ("PCHC") complaining of problems with his diabetes and hypertension.  ECF No. 24-2 ¶ 14.  He reported exercising regularly, but he had a BMI of 37.2.  *Id.*  A monofilament exam of his right foot was abnormal.  *Id.*  He had approximately seven follow-up appointments regarding his physical impairments, particularly his hypertension and hyperlipidemia, between September 4, 2019, and October 15, 2020.  Tr. at 715, 718, 720, 722, 725, 788, 794, 792.

Plaintiff also alleged that his mental impairments generally caused him memory trouble, difficulty completing tasks, difficulty following instructions, and concentration issues.  ECF No. 24-2 ¶ 4.  For example, he alleges that his mental impairments "kept him from thinking straight," caused him to worry about "everyday life," rendered him unable to shave regularly or go grocery shopping on his own, and caused him to lose interest in activities he used to enjoy.  *Id.*; *see also* Tr. at 301.  On September 18, 2019, an initial psychiatric assessment showed thoughts of inadequacy and an anxious mood, and he was diagnosed with an anxiety disorder.  ECF No. 24-2 ¶ 15.

On September 4, 2019, Plaintiff filed his application for SSI, initially alleging an onset date in 2015, which was later amended to the application date.  *Id.* ¶ 3.  Plaintiff's application was denied initially and again upon reconsideration.  *Id.* ¶¶ 5–7.  Plaintiff then retained counsel and requested a hearing on his SSI claim, which was held telephonically before Administrative Law

Judge Robert Gonzalez (the "ALJ") on November 10, 2020. *Id.* ¶¶ 8–10. On January 15, 2021, the ALJ denied Plaintiff's claim. *Id.* ¶ 11; *see also* ECF No. 12, Tr. at 16 ("ALJ Decision"). Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied his request on August 3, 2021. ECF No. 24-2 ¶ 13. Plaintiff subsequently filed the present action on January 13, 2022. ECF No. 1.

## II. LEGAL STANDARD

SSI is "designed to assist aged, disabled and blind persons by setting a minimum guaranteed income for such persons." *New York v. Sebelius*, No. 1:07-CV-1003 (GLS/DRH), 2009 WL 1834599, at *1 (N.D.N.Y. June 22, 2009) (citing 42 U.S.C. § 1381). A person is "disabled," and thus entitled to SSI, if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's medical condition meets the Social Security Act's definition of disability. *See* 20 C.F.R. § 404.1520. The five steps are best summarized as: "(1) the Commissioner determines whether the claimant is currently engaged in

substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has 'a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509' or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment 'meets or equals' an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the 'meets or equals' requirement, the Commissioner must then determine the claimant's residual functional capacity ('RFC') to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of his RFC and his education, age, and work experience." *Meade v. Kijakazi*, No. 3:20-CV-868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1509.  The claimant bears the burden of proof with respect to steps one through four, while the Commissioner bears the burden of proof at step five.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record.  *E.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks and citation omitted).

4

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quotation marks and citation omitted).  Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009).  The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citation omitted) (emphasis in original).  Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

## III. THE ALJ'S DECISION

The ALJ's decision may be summarized as follows.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date.  ALJ Decision, Tr. at 21.  At step two, the ALJ determined that Plaintiff suffered from the medically determinable impairments of depression, anxiety, and PTSD, and that those impairments were severe enough to limit his ability to perform basic work activities.  *Id.*  Relevant here, the ALJ further reasoned that Plaintiff's physical impairments—hypertension, diabetes, neuropathy, hyperlipidemia, obesity, and polysubstance abuse—were not severe because these impairments were stable and did not cause any functional limitation on his ability to perform basic work activities.  *Id.* at 21–22.

At step three, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal the severity of an impairment listed in Appendix 1 of the regulations.  *Id.* at 22.

5

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels. *Id.* at 23. Because of his mental impairments, however, the ALJ reasoned that he could perform only simple work, adapt to only routine workplace changes, and interact only occasionally with coworkers, supervisors, and the public. *Id.* In imposing those limitations, the ALJ acknowledged that Plaintiff's mental impairments could reasonably be expected to cause the symptoms of which he complained, but the ALJ also noted that Plaintiff's complaints regarding the intensity and limiting effects of those symptoms were "not entirely consistent with the medical evidence" contained in the record. *Id.* at 24.

Because the ALJ found that Plaintiff had no past relevant work, *id.* at 27, the ALJ considered Plaintiff's age, education, work experience, and RFC, and concluded that there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* For support, the ALJ cited the vocational expert's testimony that Plaintiff would be able to perform the requirements of jobs such as a laundry worker, a counter supply worker, and an electronic assembler. *Id.* at 27–28. Thus, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 28.

## IV. DISCUSSION

In his motion to reverse the Commissioner's decision, Plaintiff contends that the ALJ erred at steps two and four. Specifically, Plaintiff argues that the ALJ erred at step two when he found that Plaintiff's physical impairments were not severe because, under the Commissioner's regulations, the bar for severity at step two is low. In addition, Plaintiff argues that the ALJ erred at step four because his RFC calculation failed to take in account time spent off-task due to Plaintiff's mental impairments. The Court considers each argument in turn.

      A.  <u>Step Two</u>

As explained above, the ALJ's task at step two of the disability analysis is to determine whether the claimant has an impairment, or a combination of impairments, that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii); *id.* § 416.921. Relevant here, a physical impairment is "severe" if it significantly limits the claimant's ability to do "basic work activities," such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, among other things. *Id.* § 416.922. The severity threshold at step two is low, designed only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)); *accord McIntyre*, 758 F.3d at 151. The claimant has the burden to satisfy the severity requirement. *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012)).

When determining the severity of the impairment, the ALJ should consider the claimant's complaints of symptoms such as pain, fatigue, and weakness, *id.* § 416.929(d)(1), but, as at any step of the disability analysis, the claimant's complaints about such symptoms are not credible if they are not consistent with the objective medical evidence and other evidence presented to the ALJ, *id.* § 416.929(a). Accordingly, a claimant cannot satisfy his light burden to show the severity of an impairment by simply pointing to complaints of pain, a diagnosis, or treatment. *See Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016) (quoting *Taylor*, 32 F. Supp. 3d at 265, for the proposition that "the mere presence of a disease or impairment . . . is not, by itself, sufficient to render a condition severe"). A finding of "not severe" is appropriate if the medical evidence establishes only establishes a "slight abnormality which would have no more

than a minimal effect on an individual's ability to work." *Id.* (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999).

The Court first concludes that the ALJ's finding that Plaintiff's hypertension, hyperlipidemia, diabetes, and obesity were not severe is supported by substantial evidence. As noted above, the ALJ reasoned that those medical conditions were not severe because the notes from Plaintiff's routine medical appointments demonstrated that these conditions were generally well-controlled and stable. ALJ Decision, Tr. at 21. In support of this reasoning, the ALJ cited treatment notes from the seven outpatient appointments Plaintiff had at the PCHC between September of 2019 and October of 2020. *Id.* (citing Exs. 13F, 17F, 21F). Those notes consistently state that Plaintiff's diabetes was "without complications." *E.g.*, Tr. at 632. Although the treatment notes indicate that the treating physician was closely following Plaintiff's hypertension and hyperlipidemia, nothing about the notes indicates that Plaintiff suffered any particular limitations in his day-to-day life due to those conditions. *See., e.g.*, *id.* at 632, 717, 719, 789. For example, the notes do not report that Plaintiff complained about pain or discomfort associated with those conditions, or that the treating physician observed any particular symptoms associated with those conditions. In addition, the notes recite the medications Plaintiff was taking for those conditions, but they do not state that changes to those medications were needed to better manage Plaintiff's symptoms. In moving to reverse the Commissioner's decision, Plaintiff contends that the ALJ failed to take into account Plaintiff's complaints of pain, but he identifies virtually no evidence in the record that he has ever complained of any physical pain as a result of his hypertension, hyperlipidemia, or diabetes, and the Court has not found any instances of such complaints.

Furthermore, the ALJ noted that Plaintiff had a BMI of 37.2, but found no evidence that his obesity had any impact on his pulmonary, musculoskeletal, endocrine, or cardiac functioning, and thus reasoned that his obesity was not a severe physical impairment. ALJ Decision, Tr. at 22. In moving to reverse the Commissioner's decision, Plaintiff has not identified any evidence in the record suggesting that his obesity does in fact impact his physical functioning, or any evidence otherwise undermining the ALJ's decision in this regard.[2] Indeed, the treatment notes in the record contain virtually no complaints of pulmonary, musculoskeletal, endocrine, or cardiac issues, apart from the hypertension and hyperlipidemia which were monitored by routine follow-up visits and the diabetes which was without complications. Based on this evidence, the ALJ reasonably concluded that Plaintiff's diabetes, hypertension, hyperlipidemia, and obesity were "well-controlled" and "stable," ALJ Decision, Tr. at 21, such that these conditions did not impose "more than minimal limitations" on Plaintiff's ability to perform work-related functions, *see Smith*, 351 F. Supp. 3d at 276–77 (citation and internal quotation marks omitted). In the Court's review of the treatment records from Plaintiff's follow-up appointments at the PCHC, that conclusion is supported by substantial evidence.

The Court, however, cannot determine whether the ALJ's finding that Plaintiff's neuropathy was not severe is supported by substantial evidence. Throughout the record that was before the ALJ, Plaintiff consistently complained of neuropathy in his feet, which he alleges causes numbness and pain in his feet and difficulty standing. Tr. at 43, 279, 301. For example, at the hearing before the ALJ, Plaintiff testified that he had "numbness" in his feet, and that he

---

[2] Moreover, the ALJ noted that Plaintiff had a history of polysubstance abuse, but found that Plaintiff was in remission since August of 2019, and that he suffered no significant physical restriction due to that impairment. ALJ Decision, Tr. at 22. In his motion to reverse the Commissioner's decision, Plaintiff devotes no argument to the severity of his polysubstance issues, so the Court need not consider whether the ALJ's decision with respect to those issues was supported by substantial evidence.

sometimes, though not regularly, used a cane to assist with walking. *Id.* at 43–44. These complaints are consistent with the abnormal 10-g monofilament exam of his right foot on September 4, 2019. *Id.* at 632. In finding that Plaintiff's neuropathy was not severe, however, the ALJ did not mention either Plaintiff's complaints or the monofilament exam.

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (quoting *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The Commissioner's regulations provide a two-step process for an ALJ to evaluate a claimant's complaints of symptoms such as pain. *Id.*; 20 C.F.R. § 416.929(a). First, the ALJ considers the claimant's complaints of pain and determines whether the record contains "objective medical evidence from an acceptable medical source" showing that the claimant has a medical impairment "which could reasonably be expected to produce the pain" alleged. 20 C.F.R. § 416.929(a). If this step is met, the ALJ then considers whether the claimant's alleged functional limitations due to the pain alleged "can reasonably be accepted as consistent with" the objective medical evidence. *Id.* If the claimant's complaint of pain is "not substantiated by the objective medical evidence," the ALJ must consider all the evidence in the record to "make a finding on the credibility of" the claimant's complaint of pain. *Cichocki*, 534 F. App'x at 76; 20 C.F.R. § 416.929(c)(3). This credibility assessment is informed by seven factors set forth at 20 C.F.R. § 416.929(c)(3), including: the claimant's "daily activities"; the location, duration, frequency, and intensity of pain alleged; precipitating or aggravating factors; the effectiveness and side effects of medications the claimant has taken; non-medication treatment the claimant has received, and other measures the

claimant has used, to relieve the alleged pain; and other factors concerning the claimant's functional limitations due to the pain.

Relevant here, the regulations require the ALJ to articulate "specific reasons for the finding on credibility, supported by the evidence in the case record," with sufficient clarity so that the district court, on review, can understand the weight the ALJ gave to the claimant's complaints of pain. *Cichocki*, 534 F. App'x at 76 (quoting *Soc. Sec. Ruling 96-7p*, 1996 WL 374186, at *2); *accord Martinez v. Berryhill*, No. 3:17-CV-843 (SRU), 2019 WL 1199393, at *15 (D. Conn. Mar. 14, 2019). The ALJ need not, however, reference each of the seven factors or every particular piece of evidence in order to explain why he found a claimant's complaint of pain not credible. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). If the reviewing district court can "glean the rationale of an ALJ's decision" regarding the credibility of a claimant's complaint, and if the decision is supported by substantial evidence, remand is not required. *Id.*; *Cichocki*, 534 F. App'x at 76. In short, the ALJ's finding that the claimant's complaint of pain is not credible must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) (citing *Carroll*, 705 F.2d at 643). *See also Crysler v. Astrue*, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) (explaining that, if a claimant's subjective testimony is rejected, "the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence"); *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.").

Here, the ALJ did not articulate *any* finding about the credibility of Plaintiff's complaints of neuropathy in his feet or pain when walking and standing. The Court presumes that the ALJ found Plaintiff's complaints not credible, given that the ALJ ultimately found that Plaintiff's neuropathy did not limit his ability to perform basic work activities notwithstanding Plaintiff's complaints. The Court, however, cannot "glean the rationale for the ALJ's decision" in that regard, given that Plaintiff's complaints of neuropathy in his feet are at least somewhat substantiated by the abnormal monofilament exam findings, which were contained in a treatment note cited by the ALJ. *See Mongeur*, 722 F.2d at 1040; ALJ Decision, Tr. at 21 (citing Ex. 13F).

To be the sure, the ALJ need not have referenced each of the factors set forth in 20 C.F.R. § 416.929(c)(3) or each instance in the record when Plaintiff complained of pain or numbness in his feet in order to have concluded that his complaints were not credible. *See Mongeur*, 722 F.2d at 1040; *Hernandez v. Berryhill*, No. 3:17-CV-368 (SRU), 2018 WL 1532609, at *13 (D. Conn. Mar. 29, 2018) (upholding the ALJ's credibility determination as sufficiently specific and supported by substantial evidence, even though the ALJ did not discuss all seven regulatory factors). But the Court cannot determine if that conclusion is supported by substantial evidence in the record without even a brief explanation for why the ALJ found Plaintiff's complaints of pain in his feet not credible. *Williams*, 859 F.2d at 261 (remanding because the ALJ's failure to articulate credibility findings as to two witness' testimony "fatally" undermined the Commissioner's argument that his conclusion that the claimant was not disabled was supported by substantial evidence); *Carroll*, 705 F.2d at 643 (remanding because the ALJ failed to indicate that he did not believe the claimant's testimony and, as a result, the Commissioner failed to demonstrate that the ALJ's conclusion was supported by substantial evidence); *Perla A. v. Kijakazi*, No. 3:20-CV-1750 (MPS) (TOF), 2022 WL 892011, at *6 (D. Conn. Mar. 3, 2022) (remanding because the

ALJ's discussion of the claimant's complaint of narcolepsy was "insufficiently specific," such that the court could not "discern the rationale for the ALJ's decision" regarding the limiting effects of that condition), *adopted sub nom. Arroyo v. Kijakazi*, No. 3:20-CV-1750 (MPS), 2022 WL 891647 (D. Conn. Mar. 25, 2022); *Brandon*, 666 F. Supp. at 608 (remanding because the ALJ's "conclusory statement" discounting the credibility of the claimant's testimony was insufficient to allow the court to discern whether the ALJ's disability determination was supported by substantial evidence).

Moreover, the ALJ's error at this step was not harmless. The Commissioner's regulations require an ALJ to consider all medically determinable impairments, including those that are not severe, when calculating the claimant's RFC at step four. 20 C.F.R. § 404.1545(a)(2). To that end, courts in this circuit have found a step two error harmless when the ALJ finds other severe impairments, proceeds through the remaining steps of the disability analysis, and considers the impact of the non-severe impairment in those steps, particularly when calculating the claimant's RFC. *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (summary order) (holding that any step two error was harmless because the ALJ considered the non-severe impairments at the later steps of the disability analysis, including when determining the claimant's RFC); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (holding that the ALJ's failure to specifically articulate whether each of the claimant's impairments was severe was harmless because the ALJ considered "all impairments, whether severe or not," in the remaining steps of the disability analysis); *Whitaker v. Berryhill*, No. 3:17-CV-1337 (SRU), 2018 WL 4583508, at *13 (D. Conn. Sept. 25, 2018) (noting that the ALJ "should have discussed more fully" the credibility of the claimant's complaints of neuropathy in his foot, but finding the error harmless because the ALJ's RFC determination was consistent with the limitations alleged by the claimant due to that

impairment); *Nicholas C. v. Kijakazi*, No. 3:21-CV-420 (KAD), 2022 WL 1204929, at *5 (D. Conn. Apr. 22, 2022) (finding error in the ALJ's failure to consider the plaintiff's sacroiliitis a severe impairment, but finding the error harmless because the it was clear from the ALJ's decision that he considered the plaintiff's sacroiliitis when assessing his RFC).

When calculating Plaintiff's RFC here, however, the ALJ did not indicate that he considered Plaintiff's neuropathy as a non-severe impairment limiting his functional capacity. To the contrary, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels," with certain non-exertional limitations in light of his mental impairments.[3] Tr. at 23. This RFC finding appears directly contradictory to Plaintiff's allegation of an exertional limitation on his ability to stand and walk due to the neuropathy in his feet. Although the ALJ engaged in a robust analysis finding not credible Plaintiff's allegations regarding the impact of his mental impairments on his functional capacity, *id.* at 23–27, the ALJ did not mention any impact on Plaintiff's functional capacity due to his physical impairments, most notably, his neuropathy. *Sandra C. v. Saul*, No. 3:19-CV-942 (RAR), 2021 WL 1170285, at *5 (D. Conn. Mar. 29, 2021) (finding a step two error not harmless because the ALJ's analysis in the later steps was unclear whether the ALJ considered the impact of the non-severe impairment). Again, the ALJ might have found Plaintiff's complaints of difficulty standing and walking not credible, but, if so, he did not articulate the rationale for that finding as required by the Commissioner's regulations. *See Cichocki*, 534 F. App'x at 76. Thus, the Court cannot evaluate whether the ALJ's decision not to

---

[3] At the conclusion of the ALJ's step four analysis, the ALJ noted that he found persuasive the opinions of Dr. Erik Purins and Dr. Mark Mahoney that Plaintiff had no severe physical impairment. ALJ Decision, Tr. at 27; *see also* Tr. at 67, 76. As noted, however, the ALJ was required to consider any limitations that could be caused by severe *or non-severe* impairments when calculating Plaintiff's RFC at step four, 20 C.F.R. § 404.1545(a)(2), and the ALJ's reference to those medical opinions on the question of severity does not necessarily explain why the ALJ declined to impose any physical limitation on Plaintiff's functional capacity in light of his complaints of neuropathy in his feet.

impose any limitation on Plaintiff's RFC due to his neuropathy is supported by substantial evidence in the record.

Because the ALJ's analysis is not clear as to why the ALJ found Plaintiff's complaints of pain and numbness due to his neuropathy not credible, and because it is not clear whether the ALJ nevertheless considered Plaintiff's neuropathy as a non-severe impairment when calculating his RFC at step four, the Court cannot conclude that the ALJ's determination that Plaintiff is not disabled due to his neuropathy is supported by substantial evidence in the record. Remand on that question is warranted, and, therefore, Plaintiff's motion is granted insofar as it seeks remand to the agency, and Defendant's motion to affirm is denied.

### B. Step Four

In the interest of completeness, the Court will also consider whether, on remand, the ALJ will be required to recalculate Plaintiff's RFC in light of any error at step four with respect to his mental impairments. As explained above, the ALJ's task at step four of the disability analysis is to calculate the claimant's RFC, which is, in plain terms, the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must consider all relevant evidence in the record to calculate the claimant's RFC, including medical and other evidence, as well as evidence of severe and non-severe impairments. *Id.* §§ 404.1545(a)(1)–(3); *id.* § 404.1520(e).

As noted above, the ALJ proceeded through steps three, four, and five of the disability analysis with respect to Plaintiff's medically determinable and severe impairments of depression, anxiety, and PTSD. ALJ Decision, Tr. at 21. Relevant here, at step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels," with three non-exertional limitations: (1) he could perform only simple work; (2) he could adapt to only routine workplace changes; and (2) he could only occasionally interact with supervisors, coworkers, and

the general public. *Id.* at 23.  In calculating that RFC, the ALJ acknowledged Plaintiff's complaints of difficulty handling stress, becoming irritated by others, losing interest in activities, difficulty going outdoors, and difficulty shopping alone, and the ALJ found that Plaintiff's mental impairments could reasonably be expected to cause those symptoms. *Id.* at 23–24.  The ALJ then found, however, that Plaintiff's complaints about the intensity, persistence, and limiting effects of those symptoms were not credible because they were not consistent with the medical and other evidence in the record.  *Id.* at 24.  In other words, the ALJ explained, the medical records of Plaintiff's mental health treatment and emergency department visits did not corroborate the level of incapacity Plaintiff alleged from his symptoms.  *Id.* at 24, 26.

In moving to reverse the Commissioner's decision, Plaintiff contends that the ALJ's failure to account for time spent off-task is not supported by substantial evidence in the record.  Plaintiff further contends that this failure is not harmless because the vocational expert testified that, if an employee with Plaintiff's mental impairments spent as much as twenty percent of the workday off-task, there would be virtually no jobs in the national economy that employee could perform.  Tr. at 51.  In raising this argument, however, Plaintiff fails to identify any evidence in the record establishing that Plaintiff would spend at least twenty percent of the workday off-task due to his mental impairments.  Plaintiff generally cites his SSI applications, *see* Tr. at 234–44, 301–12, but those applications only recite Plaintiff's complaints of symptoms such as depression, mood instability, and irritability, which the ALJ considered and found not credible at the level of intensity alleged.

Moreover, the Court concludes that the ALJ's finding as to the intensity of Plaintiff's complaints regarding his mental impairments is supported by substantial evidence in the record. The treatment records pertaining to Plaintiff's mental illness demonstrate that, for example,

Plaintiff sometimes demonstrated "an irritable, mildly guarded or anxious demeanor," but that he had "good relationships" with family and friends, and that his symptoms improved when he attended routine therapy, ALJ Decision, Tr. at 24; that he was tearful and mildly withdrawn during an emergency department visit, but he was also "pleasant, awake, alert, and in no acute distress," *id.*; that he experienced acute anxiety and depression following the end of a relationship, but that he had "no significant psychiatric disturbance" at that time, *id.* at 25; that he experienced some discomfort around others, but he ultimately felt "pretty good" and demonstrated good eye contact, memory attention, concentration, and judgment, *id.*; and that he sometimes reported symptoms of anxiety and low mood, but generally demonstrated "a stable mental status," *id.* Based on that evidence, the ALJ found that Plaintiff's complaints as to the intensity of his symptoms were not credible. Specifically, the ALJ reasoned that Plaintiff's account of his daily activities, such as riding the bus, washing laundry, and shopping, reflected no limitations due to his mental impairments; that Plaintiff's symptoms improved when he complied with his therapy and medication treatment; and that his symptoms were not consistent with the medical evidence in the record given that the treatment records failed to support any marked limitation on his functional capacity. *Id.* at 26. Reflecting that credibility determination, the ALJ ultimately imposed the limitations on Plaintiff's RFC consistent with the ALJ's finding that Plaintiff suffered only a "moderate degree of limitation" in interacting with others, concentrating, and maintaining pace, particularly the limitation that Plaintiff could perform only simple work. *Id.*

This evidence is sufficient for a reasonable mind to accept as adequate to support the ALJ's RFC calculation. *Selian*, 708 F.3d at 417. Indeed, the Court must defer to the ALJ's well-articulated reasons for determining that Plaintiff's complaints as to the severity of his symptoms were not credible. *Cage*, 692 F.3d at 122 (explaining that the court must "defer to the

Commissioner's resolution of conflicting evidence"). Because Plaintiff has not satisfied his burden to prove a more restrictive RFC with respect to time spent off-task, *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order), and because the ALJ's finding as to the credibility of Plaintiff's complaints of symptoms related to his mental impairments is supported by substantial evidence in the record, the ALJ need not reconsider the limitations of Plaintiff's mental impairments when recalculating his RFC on remand.

## V. CONCLUSION

For the reasons described above, Plaintiff's motion to reverse, ECF No. 21, is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's motion is granted to the extent it seeks remand to the agency for the purposes of reconsideration and further articulation by the Commissioner as to (1) whether Plaintiff's neuropathy in his feet is a severe impairment, and (2) irrespective of whether Plaintiff's neuropathy is a severe impairment, whether Plaintiff's RFC should reflect a physical limitation due to his neuropathy in his feet. Plaintiff's motion is denied to the extent it seeks reconsideration by the agency on other grounds or an order reversing the Commissioner's decision. In light of the remand, Defendant's motion to affirm, ECF No. 24, is DENIED. The case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED** at Hartford, Connecticut, this 6th day of March, 2023.

                                           */s/ Sarala V. Nagala*
                                           SARALA V. NAGALA
                                           UNITED STATES DISTRICT JUDGE